## CIRCUIT COURT OF HENRICO COUNTY

Blue Cross

v.

James B. Kenley, etc. and
Mary Immaculate Hospital, Inc.

Blue Cross

v.

James B. Kenley, etc. and
Chesapeake Hospital Authority

October 14, 1977

Cases No. 77C631, 77C676

## By JUDGE E. BALLARD BAKER

By various pleadings, the defendants have challenged the right of Blue Cross to appeal to this Court the action of the State Health Commissioner in granting to Mary Immaculate Hospital, on June 17, 1977, a certificate of public need to construct a 120-bed hospital as a replacement facility and in granting to Chesapeake Hospital Authority, on July 5, 1977, a certificate of public need to renovate and expand its hospital.

The questions presented involve consideration of the Medical Care Facilities Certificate of Public Need Law, sections 32-211.3 to 32-211.17, and the Administrative Process Act, sections 9-6.14:1 to 9-6.14:20.

The Certificate of Public Need Law, as originally adopted in 1973, in sections 32-211.8 and 32-211.9 provided that an applicant could appeal a decision of the Commis-

sioner to the State Board of Health, and then to a Circuit Court. No other provision for appeal was provided.

At that time, the General Administrative Agencies Act, sections 9-6.1 to 9-6.14, was in effect. By section 9-6.10 any "person whose rights, duties or privileges . . . may be affected by any action or inaction of an agency without a formal hearing may demand in writing a formal hearing." This became a "contested case" under section 9-6.2(c) and under section 9-6.13. "Any person aggrieved by a final decision in a contested case" was entitled to a judicial review.

In 1975, the General Administrative Agencies Act was repealed by the Administrative Process Act. Under section 9-6.14:16:

> Any. . . party aggrieved by and claiming unlaw- fulness of a case decision. . . shall have a right to the direct review thereof either (i) by proceeding pursuant to express provisions therefor in the basic law under which the agency acted or (ii) in the absence, inapplicability, or inadequacy of such special statutory form of court review proceeding, by an appropriate and timely court action against the agency. . . in the manner provided by the rules of the Supreme Court of Virginia.

In 1977 the Certificate of Public Need Law was amended as respects procedures and appeals beyond the action of the Commissioner. The right of appeal by an aggrieved applicant was retained all the way into the judicial system. In addition, the health systems agency, an agency set up pursuant to federal law and empowered to make recommendations, was granted an appeal to "An independent hearing examiner." Section 32-211.8(B). However, the health systems agency was granted no appeal beyond that point.

Blue Cross argues that it has a right to proceed in this Court under the Administrative Process Act, arguing that the Public Need Law statutory form of court review is absent, inapplicable or inadequate as to Blue Cross, which indeed is true. Blue Cross also points to section 9-6.14:3 of the Administrative Process Act which states the purpose "to supplement present and future basic laws conferring authority on agencies to. . . decide cases

as well as to standardize court review thereof save as laws hereafter enacted may otherwise expressly provide."

Mary Immaculate and Chesapeake Hospital say that the appeal procedure in the Public Need Law is controlling and that Blue Cross, having no appeal there, cannot proceed. They urge that section 9-6.14:15 of the Administrative Process Act excludes court review to an agency action placed beyond court control by statutory provisions expressly precluding such review or where the agency action encompasses matters subject to trial de novo. The hospitals also argue that Blue Cross has no standing in any event, because it is not a "party aggrieved by. . . a case decision."

In neither bill in these cases does Blue Cross allege that it participated in the proceeding leading to the decision of the Health Commissioner. At the oral argument, and by exhibits to its original memorandum of law, Blue Cross filed copies of letters it directed to the State Health Commissioner on May 9, 1977, and May 16, 1977, stating its opposition to the applications of Mary Immaculate and Chesapeake Hospital respectively.

There is no contention by any party that the agency actions in the cases went beyond the initial determination by the Commissioner provided in section 32-211.8. The applicant, of course, was pleased with the decision. The health systems agency did not request further proceedings. Section 32-211.8 provides no appeal to any one else.

Also involved in argument of counsel is Rule 2A:1 relating to appeals pursuant to the Administrative Process Act. Under that Rule the term "party" is defined as "any person asserting that. . . a case decision is unlawful and any other person who appeared in person or by counsel at a hearing with respect to the. . . case decision." Blue Cross finds support in that definition. Defendants urge that the Rule cannot be construed to define "party" beyond "party aggrieved. . . by a case decision" under section 9-6.14:16. Article VI, section 5, Constitution of Virginia.

It also appears that Rule 2A:2 requires any party appealing to file a notice of appeal with the agency secretary within 30 days after the final order of the agency. The Rule, as is with all of Part Two A, became effective on July 1, 1977, before the Health Commissioner's decision in Chesapeake Hospital but after the June 17, 1977, decision in Mary Immaculate.

This Court starts with the proposition that the Certificate of Public Need Law does not provide any appeal to Blue Cross. The only judicial appeal is to the applicant for a certificate. The fact that this law is a limitation on a right otherwise clearly available to a person desiring to construct such facilities is sufficient reason for that appeal. Absent the law, Mary Immaculate and Chesapeake Hospital could proceed, and neither Blue Cross nor the health system agency would have any legally recognizable objection.

Section 32-211.4 of the Public Need Law sets out certain findings of the General Assembly and states, as one purpose of the law, "to provide an orderly administrative procedure for resolving questions concerning the necessity of construction or modification of medical care facilities."

From 1973 to date, there has been no provision in that law for a Blue Cross appeal. From 1973 until the 1977 amendment, there was no provision for any appeal by anyone except the applicant to the action of the Commissioner. In 1977, the hearing section of the law was substantially amended and the "hearing systems agency" was given an administrative, but not judicial, review. The fact that persons furnishing prepaid hospital plans under section 32-195.1 such as Blue Cross are not mentioned in the Public Need Law is arguably significant.

This Court is impressed with the view that the Certificate of Public Need Law was adopted due to concern over "unnecessary construction or modification of medical care facilities" as stated in section 32-211.4. To control that, the otherwise free enterprise rights of applicants were restricted, with a judicial appeal to any applicant who was denied a certificate. The absence in the law of any judicial review for anyone else leaves such other persons where they were before 1973, and is consistent with the intent to set up an "administrative procedure" for handling construction questions.

Looking at the Administrative Process Act, section 9-6.14:15 relating to agency actions to which the Act does not apply, must first be considered. Proviso (i) is not applicable, because the Public Need Law does not "expressly" preclude court review. Proviso (v) refers to "matters subject by law to a trial de novo in any court." Whether the court review given to the applicant is a trial de novo is not clear though counsel agree

that it is. Be that as it may, it is clear that no trial de novo is provided for Blue Cross in the Public Need Law, and if Blue Cross is otherwise entitled to court review proviso (v) should not be construed to remove such entitlement.

Section 9-6.14:16 says who is entitled to review. That section, as noted before, gives a direct review of an agency action to "[a]ny. . . party aggrieved by or claiming unlawfulness of a case decision."

Assuming, without holding, that the Administrative Process Act does apply to the Public Need Law, the issue becomes whether Blue Cross is a "party aggrieved." Blue Cross, in its Bills for Injunction, alleges that if Mary Immaculate and Chesapeake General are allowed to proceed the cost of services will increase "such cost increases to be borne in large part by Blue Cross and its subscribers."

Counsel cite *Insurance Association* v. *Commonwealth*, 201 Va. 249 (1959), and *Safeway Stores* v. *Milk Commission*, 197 Va. 69 (1955), on this issue of "standing." In each case, the Supreme Court discussed the meaning of person or party "aggrieved." Quoting from 4 C.J.S., *Appeal and Error*, the Court stated:

> In legal acceptation a party or person is aggrieved by a judgment, order or decree. . . whenever it operates prejudicially and directly upon his property or pecuniary rights or interests, or upon his personal rights, and only when it has such effect. The word "aggrieved" . . . refers to a substantial grievance, a denial of some personal or property right, legal or equitable, or the imposition upon a party of a burden or obligation. 201 Va. 253.

Several references in the opinion refer to the interest being directly affected and the order acting directly. The appellant in *Insurance Association* was held not a person aggrieved.

*Safeway Stores* held Safeway to be a "person aggrieved" by an order of the Milk Commission setting milk prices. The Court pointed out that Safeway distributed milk and had to comply with the order or face criminal prosecution.

In my judgment, the status of Blue Cross in these cases is not that of a "party aggrieved." The granting

of certificates to Mary Immaculate and Chesapeake Hospital is not directed to Blue Cross nor does it directly affect any pecuniary or property right of Blue Cross. The affect on Blue Cross is indirect, through its contracts with the hospitals and its subscribers.

Paraphrasing the quote found at the top of 201 Va. 249, it is difficult to see how Blue Cross can be said to be aggrieved if it has not been ordered to do anything, the order has not been addressed to it and there was no effort to exercise any authority over it.

Blue Cross cites *Bureau of Community Medical Facilities* v. *Samson*, 341 So. 2d 1071 (Fla. 1977), in support. While there may be an analogy there, there are also some differences. Blue Cross here is not in the same status as the competing Community Hospital in Florida.

Blue Cross argues that Rule 2A:1, effective July 1, 1977, and defining "party" to include "any person asserting that. . . a case decision is unlawful and any other person who appeared in person or by counsel at a hearing with respect to the. . . case decision" gives it standing. The definition is broader than the meaning of "party aggrieved" in section 9-6.14:16 as those words had been construed by the Supreme Court in *Insurance Association, supra.*

The hospitals point to Article VI, section 5, of the Constitution which requires that "such rules shall not be in conflict with the general law as the same shall, from time to time, be established by the General Assembly."

Rule 2A:1 does not define "aggrieved," only "party." However, even if it be considered that "party" in the Rule is to define "party aggrieved" in the statute, it does not seem to me that it can enlarge the meaning.

When the General Assembly enacted section 9-6.14:16, the words "party aggrieved" had a meaning. As stated in 17 M.J., *Statutes*, section 60:

> Words of known legal import are to be considered as having been used in this technical sense, or according to their strict acceptation, unless there appears a manifest intention of using them in their popular sense. When words in a statute have acquired through judicial interpretation, a well-understood legislative meaning, it is to be presumed they were used in that

sense in a subsequent statute on the same subject, unless the contrary appears.

Under the meaning of "party aggrieved" as defined by the Supreme Court prior to the passage of section 9-6.14:16, Blue Cross is not a "party aggrieved." The word "aggrieved" was in the General Administrative Agencies Act adopted in 1952, was construed by the Supreme Court in respect to another statute in *Insurance Association* in 1959 and was used by the General Assembly in section 9-6.14:16 in 1975.

The words "party aggrieved" must be given the meaning they had when the law was adopted. To say that Rule 2A:1 makes Blue Cross a "party aggrieved" is to change the meaning of the legislation. It also ignores the fact that the Rule does not attempt to define "aggrieved."

Argument can be made as to whether the Rules, effective July 1, 1977, are applicable to these two cases, but in my view there is no need to consider that issue. Assuming that they do, they do not change the meaning of "party aggrieved" in the statute.

In summary, this Court strongly suspects that the Certificate of Public Need Law was established with the intent that there be no appeals, administrative or otherwise, beyond those expressly set out in that law. However, the language in the two statutes is not strong enough to rest the decision on that. In my view, the Administrative Process Act does not give Blue Cross an appeal to the decision by the Commissioner under the Certificate of Public Need Law for the reason indicated above. That conclusion is, of course, consistent with my feeling with respect to the Public Need Law.

Consequently, this Court is of the opinion that it does not have jurisdiction to consider the Bills for Injunction.